**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SCHOOL DISTRICT** | : | |
| **OF PHILADELPHIA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH A., parent and** | : | |
| **natural guardian of** | : | |
| **CANDISS C., a minor, and** | : | |
| **CANDISS C.,** | : | **No. 08-2924** |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                          **March 24, 2009**

A hearing officer determined that the School District of Philadelphia ("the District") denied Candiss C. free appropriate public education ("FAPE") as required by federal law.  The Hearing Officer's opinion, however, satisfied neither party.  Accordingly, both Candiss and her mother, Deborah A., as well as the District, appealed to a Special Education Appeals Panel ("the Panel"). After the Panel issued its decision, the District appealed to the Commonwealth Court of Pennsylvania.  Candiss and Deborah removed that action to this Court.  They also filed in this Court a separate lawsuit under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against the District. These two cases have been consolidated.  Now before the Court are the motions of the parties for judgment on the administrative record.  Plaintiffs also seek a remand to an administrative body that would consider additional claims previously held barred by the statute of limitations.  For the reasons below, both motions will be granted in part, and denied in part.

## I.  FACTUAL BACKGROUND

Candiss C. is currently seventeen years old and at all relevant times resided in the District. The District identified her as eligible for special education services under the IDEA.  (Compl. ¶ 2.) Candiss possesses average intellectual ability but has a Specific Learning Disability in reading. (Hearing Officer Opinion ["HO"] at 2.)

On July 27, 2007, Deborah A. requested a due process hearing.  (Pls.' Mem. in Supp. of Mot. for J. on the Administrative R. and Mot. for Remand [Pls.' Mem.] at 2.)  She sought, for Candiss, compensatory education from the 1999-2000 school year through the 2006-07 school year (excluding the 2005-06 school year).  (*Id.*)  She also sought compensatory education for the summer of 2007 for the District's failure to both meet its Child Find obligations to timely identify Candiss as eligible for special services and to provide her with appropriate evaluations and Individualized Education Programs ("IEP"s) during that period.

### A.  The Hearing Officer's Decision

On January 17, 2008, the Hearing Officer issued a written decision that addressed five issues: (1) whether claims prior to July 27, 2005 were barred by the statute of limitations; (2) whether any exceptions to the two-year limitations period applied; (3) whether the District provided Candiss with FAPE from July 27, 2005 through the balance of the summer; (4) whether the District provided Candiss with FAPE during the 2006-07 school year; and (5) whether the District failed in its Child Find obligations.  (HO at 2-3.)  Over the course of the two-day due process hearing, the Hearing Officer heard testimony from two witnesses and received documentary evidence.

The Hearing Officer's decision includes fifty-one findings of fact and seven legal conclusions.  The Hearing Officer concluded that the District failed to provide Candiss with FAPE

2

for the 2006-07 school year, that the statute of limitations barred claims for compensatory education and remedies under Section 504 and the IDEA prior to July 27, 2005, and that neither of the two exceptions to the IDEA-2004 statute of limitations applied to Candiss.[1]  (HO at 8.)  The Hearing Officer also declined to award Candiss Extended School Year Services ("ESY") for the summer of 2007.  (Pls.' Mem. at 3.)

The Hearing Officer determined that the 2006-07 IEPs were "certainly deficient in the behavior area.  A prompt evaluation should have been completed.  Without an evaluation, the IEP is deficient because it failed to address documented behavior issues."  (HO at 14.)  The Hearing Officer also determined that Candiss showed a need for reading intervention and that she fell well below grade level in reading.  (HO at 14.)  She concluded that the IEPs dated November 3, 2006, March 29, 2007, and June 8, 2007 were deficient and their implementation was a denial of FAPE for the 2006-07 school year.  (HO at 15.)  The Hearing Officer ordered, *inter alia*, compensatory education at the rate of two hours per day multiplied by the number of school days Candiss attended school between November 1, 2006 and the date an appropriate IEP was implemented.  (HO at 17.)

### B.    The Appeals Panel's Decision

Both Plaintiffs and the District appealed to the Panel.  The Panel affirmed the Hearing Officer's decision that Candiss was not denied FAPE for the summer of 2007.  (Appeals Panel Opinion ["AO"] at 6-7.)  The Panel also affirmed the Hearing Officer's decision regarding the IDEA-2004 statute of limitations but noted that it lacked jurisdiction to address the Section 504 claim.  (AO at 7-10.)  The Panel also agreed that neither of the statutory exceptions to the IDEA-2004 statute of

---

[1] A 2004 amendment to the IDEA ("IDEA-2004") introduced a statute of limitations for requests for a due process hearing.

limitations applied to Candiss's case and that the IDEA-2004 did not recognize non-statutory exceptions. (AO at 10-11.) The Panel did modify the Hearing Officer's decision in one regard; the majority of the Panel deemed the District's denial of FAPE sufficiently pervasive to warrant a day-for-day remedy. (AO at 12.) Accordingly, Candiss was awarded compensatory education at the rate of 5.5 hours per day multiplied by the number of school days that Candiss attended school from November 1, 2006 to the end of the 2006-07 school year. (AO at 13.)

Both Plaintiffs and the District raise issues with the Panel's decision. The District requests that this Court affirm the decision of the Panel with one key exception – the District would like the Hearing Officer's award of two hours a day to be reinstated rather than the Panel's 5.5 hours per day award. Candiss and Deborah, on the other hand, want this Court to remand this matter so that a hearing officer can consider Candiss's claims previously deemed outside the statute of limitations. Plaintiffs also want this Court to reverse the Panel's decision that Candiss is not entitled to compensatory education services for the summer of 2007. Finally, Plaintiffs ask the Court to affirm the Panel's 5.5 hours per day compensatory education award for the 2006-07 school year.

## II.    STANDARD OF REVIEW

In IDEA actions, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C) (2006). In evaluating such claims, "the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings" made during the administrative proceeding. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *see*

4

*also Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). A district court's standard of review when

a party challenges the ruling of a state administrative agency has been characterized as "unusual"

because:

> Although the District Court must make its own findings by a preponderance of the
> evidence, the District Court must also afford "due weight" to the [agency's]
> determination. Under this standard, "[f]actual findings from the administrative
> proceedings are to be considered prima facie correct," and "[i]f a reviewing court
> fails to adhere to them, it is obliged to explain why." In addition, if a state
> administrative agency has heard live testimony and has found the testimony of one
> witness to be more worthy of belief than the contradictory testimony of another
> witness, that determination is due special weight. . . . [T]his means that a District
> Court must accept the state agency's credibility determinations "unless the non-
> testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." In
> this context, the word "justify" demands essentially the same standard of review
> given to a trial court's findings of fact by a federal appellate court.

*Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citations omitted).

The burden of proof in an action challenging an IEP falls upon the party seeking relief and remains

on that party throughout the case. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *Oberti v. Bd. of Educ.*

*of Clementon Sch. Dist.*, 995 F.2d 1204, 1218-19 (3d Cir. 1993).

## III.   DISCUSSION

### A.   The Statute of Limitations

#### 1.   *IDEA-2004*

Plaintiffs claim that this Court may not apply IDEA-2004's statute of limitations retroactively

to bar claims that existed prior to July 1, 2005, the date the law became effective. Plaintiffs'

argument regarding application of the IDEA-2004's statute of limitations has persuaded a number

of judges in this District. *See Steven I. v. Cent. Bucks Sch. Dist.*, Civ. A. No. 08-571, 2009 WL

415767 (E.D. Pa. Feb. 18, 2009); *Laura P. v. Haverford Sch. Dist.*, Civ. A. No. 07-5395, 2008 WL

5000461 (E.D. Pa. Nov. 21, 2008); *Zoe S. v. W. Chester Area Sch. Dist.*, Civ. A. No. 06-3985, Docket Entry No. 22 (E.D. Pa. Oct. 16, 2008); *Tereance D. v. Sch. Dist. of Phila.*, 570 F. Supp. 2d 739 (E.D. Pa. 2008).  Unfortunately for Plaintiffs, this Court came to a different conclusion when it considered this legal issue.  In *Evan H. v. Unionville-Chadds Ford School District*, this Court analyzed the meaning and application of IDEA-2004, which requires that "a parent or agency [ ] request an impartial due process hearing within 2 years of the date the parents or agency knew or should have known about the alleged action that forms the basis of the complaint."  Civ. A. No. 07-4990, 2008 WL 4791634, at **3-4 (E.D. Pa. Nov. 4, 2008) (citing 20 U.S.C. § 1415(f)(3)(c)).  After examining the legal landscape on the retroactive application of IDEA-2004, this Court focused on the fact that the action in *Evan H.*, similar to the case now before the Court, was brought after the change in the statute of limitations and under the amended law.  The Court then held that barring claims outside the two-year window in which one must request a due process hearing under IDEA-2004 was not "impermissibly retroactive."  *Id*. at *4.

Admittedly, the law in this area is unsettled.  This legal uncertainty leaves IDEA litigants in an unenviable position.  The Third Circuit hopefully will soon shed light on this important question.  But until then, Plaintiffs have put forth no arguments that would lead this Court to reconsider its decision in *Evan H.* regarding the applicability of the IDEA-2004 statute of limitations.[2]  Here, the Hearing Officer barred Plaintiffs' claims for compensatory education that arose prior to July 27, 2005, which was two years before Deborah requested a due process hearing.  Given the decision in *Evan H.*, this Court holds that the statute of limitations was properly applied to bar Plaintiffs' claims.

---

[2] The Court appreciates that Plaintiffs wish to preserve the issue for appeal.  (*See* Pls.' Mem. at 5 n.4.)

2.      *Statutory exceptions to IDEA-2004*

Plaintiffs argue that even if the relevant statute of limitations bars their claims, the statutory exceptions to IDEA-2004 apply to excuse their tardiness.   Section 1415(f)(3)(D) provides two exceptions to the two-year limitation period for requesting a due process hearing:

> The time line described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to--
>
> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
>
> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D).   These exceptions apply only if the District made a misrepresentation and/or withheld information and this conduct "prevented [the parent] from requesting the [due process] hearing."   *Id*.; *see also Evan H.*, 2008 WL 4791634, at *6.

This Court considered the import of this statutory provision in *Evan H.*  The Court noted that neither the provisions of IDEA-2004, nor the regulations interpreting the statute, outlined precisely how a hearing officer must consider a claim that these exceptions apply.   *Evan H.*, 2008 WL 4791634, at *6.   Nonetheless, the Court analyzed the meaning of the language contained in the statute and will adhere to that analysis here.

a.      *Specific misrepresentations*

Although the meaning of "specific misrepresentation" under the law has not been explicitly defined, this Court previously concluded that "at the very least, a misrepresentation must be intentional in order to satisfy the first of the exceptions in IDEA-2004."   *Id*.  Plaintiffs must establish "not that the District's evaluations of the student's eligibility under IDEA were objectively incorrect, but instead that the District subjectively determined that the student was eligible for services under

7

IDEA but intentionally misrepresented this fact to the parents." *Id.*

With this standard in mind, the Court concludes that the "specific misrepresentation" exception does not apply to Plaintiffs' claims. Plaintiffs argue that the District repeatedly misrepresented that Candiss was doing well and making significant progress in all areas, including her reading. (Pls.' Mem. at 17-18.) According to Plaintiffs, despite Deborah's protests that Candiss's needs were not being addressed, the District misled her by withholding information about Candiss's standardized test scores that would have demonstrated her regression. (*Id.* at 18.) At most, Plaintiffs have demonstrated that Candiss's IEPs were deficient. This showing does not, however, evince a specific misrepresentation. For example, although Plaintiffs accurately noted that Candiss's October 26, 2004 IEP stated that she made significant progress during the past school year and that she increased her reading level by 1-2 years, these comments fail to paint a complete picture. That same IEP also noted that Candiss needed to improve her basic word decoding skills and that, due to her reading disability, Candiss required specially designed instruction on an itinerant basis. (P-11 [Oct. 26, 2004 IEP] at 4.)[3] Additionally, Candiss's June 8, 2007 IEP stated that she was impulsive in class and that standardized testing revealed her reading to be below her grade level. (P-1 [June 8, 2007 IEP] at 5.) Nothing in the record indicates that the District intentionally misrepresented anything to Deborah. At most, the IEPs were inadequate to address Candiss's needs. But if that were sufficient to warrant application of the statutory exception, the exception would swallow the rule. In hindsight, Deborah might consider the District's assessment of Candiss to be wrong, but that does not rise to a specific misrepresentation. Thus, giving "due weight" to the

---

[3] Unless otherwise indicated, the Court will identify the Exhibits referenced in this Memorandum as they were marked for the Hearing Officer during the Due Process Hearing.

Hearing Officer's factual findings regarding the District's purported misrepresentations, this Court concludes as a matter of law that the IDEA-2004's "specific misrepresentation" exception does not apply to toll the statute of limitations in this case.

b.    *Withholding information*

Plaintiffs also claim that the withholding of information exception applies and that they should therefore be permitted to bring their stale IDEA claims.  Under this exception, a party must have been prevented from requesting a due process hearing due to "the local educational agency's withholding of information from the parent *that was required under this subchapter to be provided to the parent*."  *Evan H.*, 2008 WL 4791634, at *7 (citing 20 U.S.C.A. § 1415(f)(3)(D)(ii)).

Again, the Court considered this issue in *Evan H.* and decided that this exception "refers solely to the withholding of information regarding the procedural safeguards available to a parent under that subchapter."  *Id*. at *7.  These safeguards "includ[e] filing a complaint and requesting an impartial due process hearing," as provided for by law.  *Id.* (citing *D.G. v. Somerset Hill Sch. Dist.*, 559 F. Supp. 2d 484, 492 (D.N.J. 2008)).

Plaintiffs argue that Deborah was unable to meaningfully participate in the IEP meetings involving her daughter because the District "repeatedly failed to provide accurate, objective and measurable present levels of education for Candiss" and that Deborah did not understand the IEPs because of their complexity.  (Pls.' Mem. at 19.)  They contend that the District failed to inform Deborah of her right to seek a due process hearing and failed to inform her of the deadline for requesting such a hearing.  (*Id*.)  And, according to Plaintiffs, none of the procedural safeguard notices Deborah received notified her of a statute of limitations.  (*Id*.)

However, as the Hearing Officer noted in her decision, the record contains several notices

9

informing Deborah of her right to request a due process hearing.  The administrative record includes

a Procedural Safeguards Letter, dated October 16, 2005, which informed Deborah that she "may

initiate a hearing regarding the school district's/public agency proposal or refusal to initiate or

change the identification, evaluation, or educational placement of the student or the provision of a

FAPE."  (P-12 at 7 [2005 Procedural Safeguards Letter].)[4]  The Procedural Safeguards Letter listed

the rights of a party who requests a due process hearing and sets forth the appeals process should a

party wish to contest the findings of the hearing officer, including the right to file a lawsuit in state

or federal court.  (*Id.* at 8-9.)  A similar Procedural Safeguards Letter, dated December 13, 2007 was

also sent to Deborah.  (P-15 [2007 Procedural Safeguards Letter].)  The November 3, 2006 IEP,

which Deborah approved, included a place for her to request a due process hearing if she so elected.

(P-3 [Nov. 3, 2006 IEP] at 18.)  Although the letters Deborah received failed to reference the statute

of limitations, this does not mean that the District withheld information that it was required to

provide.

Simply put, the record contains no evidence the District withheld information from Deborah.

In fact, she concedes that she received procedural safeguards notices dating back to the 1999-2000

school year.  (Pl.'s Mem. at 19.)  Furthermore, as early as August of 2002, Deborah initiated the

complaint process through the Pennsylvania Department of Education and received a Complaint

Investigation Report in response to her complaint.  (HO-16 [Stipulations] ¶¶ 1-4.)  Plaintiffs argue

that because the complaint was resolved without a due process hearing, Deborah remained unaware

---

[4] The Procedural Safeguards Letters sent to Deborah indicate that they were drafted on
April 1, 2002, and refer to rights and procedures under the Individuals with Disabilities Act
Amendments of 1997, commonly referred to as "IDEA 1997."  Given the 2004 amendment of
the IDEA, the District would be wise, if it has not already done so, to update its paperwork to
reflect the change in the law.

of her right to request one.  (Pls.' Mem. at 18.)  But the statutory exception does not apply upon a showing that a parent was unaware of her rights absent a showing that the District withheld information it was obligated to provide.  Furthermore, although the 2002 complaint was resolved without a due process hearing, Deborah received Procedural Safeguards Notices in August of 2002 and in March of 2003, the latter accompanying the compensatory education agreement and a Notice of Recommended Educational Placement (NOREP) relating to the 2002 complaint.  (HO-16 ¶¶ 8-9.) Thus, she cannot claim the protections afforded by the "withholding information" exception to IDEA-2004's statute of limitations.

### 3.    *Equitable tolling under section 504*

Plaintiffs also contend that their claims under Section 504 do not contain a statutory limitations period and are subject to the continuing violation doctrine, equitable tolling, and/or minority tolling principles.  (Pls.' Mem. at 10.)  Similar arguments were considered and rejected by this Court in *Evan H.*, which relied on the Third Circuit's decision that the two-year Pennsylvania personal injury statute of limitations was the appropriate statute of limitations for Section 504 claims.  2008 WL 4791634, at *8 (citing *Disabled in Action of Pa. v. Se. Pa. Tranps. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008)).  Furthermore, Plaintiffs have put forth no evidence that would warrant applying equitable tolling principles or the continuing violation doctrine.  *See Evan H.*, 2008 WL 4791634, at *8   (noting that only extraordinary circumstances warrant equitable tolling).

### 4.    *Child Find obligations*

Plaintiffs contend that it would be manifestly unjust to bar their claims due to the District's failure to identify Candiss, in accordance with its Child Find obligations.  (Pls.' Mem. at 16-17.) "IDEA's Child Find duty requires the State have a system in place to identify, locate, and evaluate

all children with disabilities residing in the State who have need of special education and related services.  Section 504 has a similar requirement. "  *P.P. v. W. Chester Area Sch. Dist.*, 557 F. Supp. 2d 648, 665 (E.D. Pa. 2008) (citations omitted).

Plaintiffs' claims concerning the District's Child Find obligations are brought under the IDEA or Section 504 and this Court has already determined that both statutes contain a two-year statute of limitations.  The same statute of limitations therefore bars Plaintiffs' claims for purported violations of the District's Child Find obligations.  *See P.P.*, 557 F. Supp. 2d at 665  (applying two-year statute of limitations to alleged Child Find violations); *see also Daniel S. v. Council Rock Sch. Dist.*, No. 06-3531, 2007 WL 3120014, at *2 (E.D. Pa. Oct 25, 2007) ("There is a two-year statute of limitations for the child find provisions under the IDEA.") (citing 20 U.S.C. § 1415(f)(3)(c) (2007)).

   **B.      The District's Denial of FAPE for Candiss**

         *1.      The IDEA*

The IDEA seeks to ensure that all children with disabilities have access to FAPE including, when needed, special education and related services geared to the unique needs of the child.  *M.A. v. Vorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 360 (D.N.J. 2002) (citing 20 U.S.C. § 1400(d)(1)(A)).  "This education must be tailored to the unique needs of the disabled student through an individualized education program ('IEP')."  *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).  The IDEA requires that a "multi-disciplinary team" devise an IEP, which is a detailed written statement summarizing the child's activities, outlining the goals for the child's education and specifying the services the child will receive.  *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988).  A child's IEP is reviewed at least annually to determine

whether the child is reaching the listed goals and the IEP is revised "as appropriate." 20 U.S.C. § 1414(d)(4).

Whether an IEP is appropriate is a factual question. *S.H.*, 336 F.3d at 271 (citation omitted). The IEP must be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. It must provide more than a de minimis educational benefit, but school districts are not required to provide the optimal level of services. *Neena S. v. Sch. Dist. of Phila.*, Civ. A. No. 05-5404, 2008 WL 5273546, at *11 (E.D. Pa. Dec. 19, 2008). The determination of an IEP's appropriateness must be made at the time the IEP is offered and not at some later date. *Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993) ("Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement.").

### 2. Section 504

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Notably, "[t]here are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." *Ridgewood*, 172 F.3d at 253.

To prevail on a Section 504 claim, a plaintiff must prove that: (1) he or she is disabled as defined by the Act; (2) he or she is otherwise qualified to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he or she was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *Andrew M. v. Del. County Office of Mental Health and Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007)

(citing *Ridgewood*, 172 F.3d at 253).  "[W]hen a state fails to provide a disabled child with a free and appropriate education, it . . . also violates the RA [in addition to the IDEA] because it is denying a disabled child a guaranteed education merely because of the child's disability."  *Andrew M.*, 490 F.3d at 350.

        3.     *Analysis*

            a.    *2006-07 School Year*

According to Deborah, Candiss first experienced difficulties in school during fifth grade. (HO at 4.)  Candiss attended school in the District until the 2005-06 school year, during which she attended a charter school.  (*Id.*)  She attended a charter school for that year because Deborah felt it would offer Candiss more discipline and structure than a public school.  (Due Process R. at 268 (Oct. 30, 2007 Hrg.).)

On April 21, 2006, a Reevaluation Report (RR) was completed while Candiss was in the eighth grade at her charter school.  (HO at 4.)  The RR noted that Candiss had a specific learning disability and that she required special education and services.  (*Id.*)  It further expressed Deborah's concern that her child receive an appropriate education and that her behavior improve.  (P-2 [RR] at 1.)  The RR stated that Candiss had a specific learning disability and there was a "severe discrepancy between achievement and ability that is not correctable without special education and related services."  (*Id.* at 3.)  Candiss left the charter school because it only went through eighth grade; she returned to the District in September 2006 for the ninth grade.  (HO at 4.)

According to the RR, Candiss lived with her mother, an older sister, and her mother's male companion.  (RR at 1.)  She had repeated the second grade due to reading difficulties.  (*Id.*)  Her father was killed in a motorcycle accident when Candiss was nine.  (RR at 1-2.)  The accident left

Candiss angry and led to some impulsive behavior.  (RR at 2.)  Nonetheless, Candiss was described as "attractive, friendly and outgoing."  (RR at 3.)  In fact, the RR indicated that her behavior during the evaluation differed greatly from her behavior in the classroom.  (RR at 4.)

The District developed an IEP for Candiss on November 3, 2006.  The Hearing Officer concluded that the District had failed to provide Candiss with FAPE for the 2006-07 school year because the first IEP was not written in objective measurable terms and failed to specifically address Candiss's reading difficulties.  (HO at 5.)  The Hearing Officer noted a number of deficiencies in the November 3, 2006 IEP.  For example, although the IEP sought to have Candiss demonstrate fluency and comprehension in reading and to read grade-appropriate narrative, the IEP failed to define "grade-appropriate." (*Id*.)  The IEP noted that Candiss's reading skills impeded her ability to timely complete class assignments and that she was two or more grades below her reading grade level. (Nov. 3, 2006 IEP at 5.)  Nonetheless, the IEP failed to identify how Candiss's reading deficiencies would be addressed and the literacy and transition goals set forth were "extremely general."  (HO at 5.)  In addition to literacy goals, the IEP outlined transition goals, such as developing a plan for life after high school.  (*Id*. at 19.)  However, it failed to directly address Candiss's behavioral issues. The IEP included a NOREP, which suggested Candiss spend one class period a day in the resource room and participate in one special education English class.  (*Id*. at 14.)  Deborah approved this suggestion.  (*Id*. at 18.)

A neuropsychological evaluation performed on Candiss by her therapist, Judith A. Shechter, Ph. D., in November of 2006 (after the November 3, 2006 IEP) concluded that Candiss was not receiving the level of special education services she required and to which she was entitled.  (P-13 [Shechter Report] at 6.)  The report also indicated that Candiss was not receiving services for her

"serious social-emotional problems."  (*Id.* at 6.)  Dr. Shechter expressed dismay that, although Candiss was reading at four levels below her current grade level, the District only provided her with preferential seating and a minimal amount of special education services.  (*Id.* at 1.)  As a result of her reading troubles and the District's failure to provide her with the necessary resources, Candiss was struggling mightily in all classes except math.  (*Id.*)  At the time of the report, Candiss was being treated for serious depression and struggled to control her anger.  (*Id.* at 2.)  She was frustrated by her troubles with reading and defensive about being "stupid" due to her reading issues.  (*Id.*)  The evaluation revealed an emotionally troubled teen, prone to fits of anger and "mired in melancholy, self-derogation, and intense hopelessness."  (*Id.* at 4-5.)  Candiss also felt insecure and inadequate and reported troubled relationships with her family.  (*Id.* at 2, 5.)

In early 2007, Deborah contacted the Office of Dispute Resolution ("ODR") to express her concerns about Candiss's lack of progress.  (Due Process R. at 248 (Oct. 30, 2007 Hrg.).)  Deborah filed an IEP Facilitation Request Form because Candiss was not receiving the educational support she needed.  (P-14 [Facilitation Request Form].)  Shortly thereafter, a facilitator met with Deborah and some of Candiss's teachers to discuss Candiss's progress in school.  (Due Process R. at 250-51 (Oct. 30, 2007 Hrg.).)  Unfortunately, Deborah came away from the meeting feeling defeated.  (*Id.* at 251.)  She was frustrated that nobody committed to do anything to help Candiss, whom Deborah felt was left to struggle through her reading difficulties on her own.  (Due Process R. at 328-29 (Oct. 30, 2007 Hrg.).)

Another IEP was issued on March 29, 2007.  Around this time, Dr. Shecter's report was shared with the District and was discussed.  (Due Process R. at 240-41 (Oct. 30, 2007 Hrg.).)  As the Hearing Officer noted, the March 29, 2007 IEP contained four literacy goals, one behavior goal,

16

and one transition goal; it also referenced reading levels two or more grades below the appropriate grade level.  (HO at 6.)  It recommended that Candiss spend one class period per day in the resource room and participate in one special education English class.  (*Id*.)  Although the IEP noted that Candiss needed to improve her attendance, it made no reference to any of the disciplinary referrals made for disruptions in school.  (HO at 6; P-7 [Mar. 29, 2007 IEP] at 5; *see also* P-8 [Exclusion from School Notices]; *see also* Due Process R. at 108 (Oct. 29, 2007 Hrg.).)  In one disruptive incident, which occurred one day prior to the IEP meeting, Candiss chased a male student, threw a book at him, and kicked him.  (P-9 [Mar. 28, 2007 Incident Report].)  She also threatened a teacher.  (*Id*.)  Nonetheless, this incident failed to find its way into the March 29, 2007 IEP.  (Due Process R. at 106-07 (Oct. 29, 2007 Hrg.).)  The Hearing Officer concluded that, although the March 29, 2007 IEP was "somewhat more specific in the literacy goals," the behavioral goal merely focused on improving attendance and on-time behaviors.  (HO at 6.)  Deborah signed a NOREP, but did not indicate whether or not she approved the District's recommendations in the March 29, 2007 IEP. (D-21 [Mar. 29, 2007 IEP NOREP].)

A third IEP, completed on June 8, 2007, stated that although Candiss was progressing in her reading, her skills still fell below her grade level.  (P-1 [June 8, 2007 IRP] at 5.)  Candiss improved her reading comprehension and increased the fluency of her reading from less than 125 words per minute to over 150 words per minutes.  (*Id*. at 11.)  The IEP described Candiss as impulsive, but stated that she was able to slow down and "thoughtfully consider what is being done."  (*Id*. at 5.) Although she remained disruptive, she improved her attendance, was increasingly on-time for class and was more prepared.  (*Id*. at 5-6.)  The Hearing Officer noted that the June 8, 2007 IEP was internally inconsistent because it stated both that Candiss's behavior was not impeding her learning

and that her attendance and "inappropriate behavior impede her ability to make progress in the general education curriculum." (*Id*. at 4, 7; HO at 7.)

The June 8, 2007 IEP set forth numerous literacy goals, including increasing Candiss's vocabulary, employing a writing strategy to write answers to open-ended questions, and using phonics to decode unfamiliar words. (P-1 at 11, 13, 15.) She was to spend one period per day in a resource room and numerous accommodations were made to help Candiss meet her goals. (*Id*. at 12, 14, 16, 18, 23.) The IEP also included transition goals for independent living and employment. (*Id*. at 19-21.) There was only one behavioral goal, however: that Candiss "improve [her] class attendance to 90% each week monthly." (*Id*. at 17.) Deborah signed a NOREP approving the recommendations in the June 8, 2007 IEP. (D-25 [June 8, 2007 IEP NOREP].) She did so because she believed that the District would help Candiss with her disability. (Due Process R. at 267 (Oct. 30, 2007 Hrg.).)

Ultimately, the Hearing Officer concluded that the District failed Candiss in a number of respects. First, the District did not act to evaluate and identify Candiss's behavior problems and to determine how to correct her disruptive behavior, despite a professional evaluation that alerted the District of the issue. According to the Hearing Officer, the District "appeared to ignore completely the myriad of behavior incidents identified by its own teachers." (HO at 14.) Second, the District failed to specifically address Candiss's need for reading intervention. She was reading well below grade level, yet the District offered only "vague and incomplete" goals and objectives relating to literacy. (*Id*.) Third, the transition plan offered by the District was "quite sketchy and wholly unhelpful," because it failed to focus on Candiss's reading and behavioral issues. (HO at 14-15.) The Hearing Officer expressed concern that no one from the District testified in an attempt to

support the IEPs. (HO at 15.) The Panel did not disturb these findings. In fact, the Panel concluded that the FAPE denial "was sufficiently pervasive" to warrant an increased award of compensatory education. (PO at 12.)

Although the Court notes that the IEPs indicate that Candiss was making progress, nothing in the record warrants a departure from the factual findings of the Hearing Officer. Giving the decisions below their "due weight," the conclusions that Candiss was denied FAPE are amply supported by the record. The literacy goals stated in the IEPs were ill-defined and the behavioral goals failed to consider numerous incidents that demanded the District pay attention to Candiss's acting out and try to rectify the situation. Furthermore, according to Deborah, Candiss's time in the resource room was essentially a free period, during which she would wander the halls, go to the bathroom, and act disruptively, rather than a time for her to work on developing her reading skills. (Due Process R. at 266, 319-20 (Oct. 30, 2007 Hrg.).)

Indeed, the District does not raise any issue with the finding that it denied Candiss FAPE, but only challenges the amount of compensatory education awarded. This Court agrees with the Panel's decision that the denial of FAPE in Candiss's case was pervasive enough to warrant an award of 5.5 hours per day. *See S. v. Wissahickon Sch. Dist.*, Civ. A. No. 05-1284, 2008 WL 2876567, at *3 (E.D. Pa. July 28, 2008) ("[W]here the conclusions of the hearing officer and the Appeals Panel differ, 'due weight' to the administrative proceedings generally requires deference to the Appeals Panel . . . ."). Furthermore, the only District representative to testify during the due process hearing, Dr. Joyce Krempasky, Special Education Director for the Philadelphia School District, South Region, testified that she did not review Candiss's educational records because she did not participate in any of her IEPs or the meetings regarding Candiss. (Due Process R. at 40 (Oct.

29, 2007 Hrg.).) Candiss was obviously struggling, but the District did not set appropriate goals and benchmarks to ensure her unique reading needs and behavior troubles were addressed.

This Court also concludes that the denial of FAPE violated Section 504. The only element of a Section 504 claim at issue here is whether Candiss was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. Clearly the only reason she did not receive the benefits of a FAPE was because of her disability. *See Neena S.*, 2008 WL 5273546, at *14. Curiously, neither the District's Motion for Judgment on the Record nor their response to Plaintiffs' motion makes any mention of the Rehabilitation Act. The Court takes such silence as a concession that the District's denial of FAPE to Candiss also violated the Rehabilitation Act.

*b.     Summer of 2007*

Plaintiffs contend that the Hearing Officer erred when she failed to award Candiss compensatory education during the summer of 2007 in the form of Extended School Year Services (ESY). The Panel rejected this argument because the record did not support a conclusion that the failure to offer Candiss ESY denied her FAPE. (AO at 6-7.)

Plaintiffs merely assert that the District failed to offer Candiss ESY for the Summer of 2007 without addressing the conclusion of the Panel that this failure did not deny Candiss FAPE. (Pls.' Mem. at 34.) Candiss's IEPs, which Deborah approved, indicated that she was not eligible for ESY. Furthermore, the record is undisputed that Deborah did not inform the District that she wanted ESY services provided to Candiss. (Due Process R. at 335 (Oct. 30, 2007 Hrg.).) Finally, Candiss left the District at the end of June of 2007. (Due Process R. at 285 (Oct. 30, 2007 Hrg.).) Plaintiffs have failed to sustain their burden in challenging this aspect of the administrative decisions. Thus, the decision of the Panel will be affirmed with respect to ESY.

### C.    Compensatory Damages

Under the IDEA, a court "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).  The Third Circuit has not yet decided whether compensatory damages are available under the IDEA.  *C.M. v. Bd. of Educ. of Union County Reg'l High Sch. Dist.*, 128 F. App'x 876, 880 (3d Cir. 2005); *see also Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61, 68 n.5 (3d Cir. 2004).  Those Courts of Appeal that have decided the question have concluded that compensatory damages are not available under the IDEA.  *See Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 297 (M.D. Pa. 2008) (citing First, Second, Fourth, Seventh and Ninth Circuit cases rejecting compensatory damages under IDEA).  District courts in the Third Circuit have also rejected the argument.  *See, e.g., Neena S.*, 2008 WL 5273546, at *15; *Derrick F.*, 586 F. Supp. 2d at 297; *Brandon V. v. Chichester Sch. Dist.*, Civ. A. No. 06-4687, 2007 WL 2155722, at *2-3 (E.D. Pa. July 15, 2007).  This Court joins with those that have decided that compensatory money damages are unavailable under the IDEA.

Compensatory damages are available under Section 504.  *Neena S.*, 2008 WL 5273546, at *15 (citing *W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir. 1995)).  But Plaintiffs' Section 504 claim relies on the District's denial of FAPE for Candiss.  Nothing in the record indicates injury as a result of anything other than denial of FAPE.  Indeed, Plaintiffs' Complaint seeks monetary damages "as a result of the District's failure to offer Candiss a FAPE," an argument reiterated in their papers filed in support of their motion.  (Compl. ¶ 19; Pls.' Mem. at 36.)  Accordingly, the appropriate remedy for this wrong is compensatory education, not monetary damages.  *See Neena S.*, 2008 WL 5273546, at *15 (refusing to award monetary damages for Rehabilitation Act violation when only harm suffered was denial of FAPE).

21

**IV.      CONCLUSION**

For the above-stated reasons, the Court affirms the decision of the Hearing Officer and the Panel that Candiss was denied FAPE for the 2006-07 school year and affirms the decision of the Panel regarding the amount of compensatory education as well as the decisions of the Hearing Officer and the Panel that Candiss was not denied FAPE during the summer of 2007.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SCHOOL DISTRICT** | : | |
| **OF PHILADELPHIA,** | : | **CIVIL ACTION** |
|       **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH A., parent and** | : | |
| **natural guardian of** | : | |
| **CANDISS C., a minor, and** | : | |
| **CANDISS C.,** | : | **No. 08-2924** |
|       **Defendants.** | : | |

<u>**ORDER**</u>

    **AND NOW**, this **24**th day of **March**, **2009**, upon consideration of Plaintiffs' Motion for

Judgment on the Administrative Record and Remand, the District's response thereto, the District's

Motion for Judgment on the Administrative Record and Plaintiffs' response thereto, after review of

the administrative record, and for the foregoing reasons, it is hereby **ORDERED** that:

1.     Plaintiffs' Motion for Leave to File Excess Pages (Document No. 7) is **GRANTED.**

2.     Plaintiffs' motion for Judgment (Document No. 8) is **GRANTED in part** and

   **DENIED in part**.  Plaintiffs' request for remand is **DENIED**.

3.     Defendant's motion for Judgment (Document No. 9) is **GRANTED in part** and

   **DENIED in part**.

4.     The decision of the Appeals Panel is **AFFIRMED**.

5.     Plaintiffs' request for compensatory damages is **DENIED**.

6.      The Clerk of Court is directed to close this case.

                                        **BY THE COURT:**

                                        **Berle M. Schiller, J.**